## H. RIEMENSCHNEIDER, ADMINISTRATOR, *vs.* WM. KA-LAEHAO.

### EXCEPTIONS TO RULINGS OF JUDD, C. J.

### JANUARY TERM, 1886.

### JUDD, C. J.; McCULLY and PRESTON, JJ.

Marriage does not vest choses in action of the wife in the husband, unless he takes steps to reduce them to possession during coverture; so held as to promissory notes made to the wife by a third party, for a loan made out of her private money.

A carriage and horses bought by the wife with money derived from sale of her land; held to be the property of the husband.

New trial ordered, unless plaintiff files *remittitur*.

### OPINION OF THE COURT, BY PRESTON, J.

THIS case comes up on a bill of exceptions to the rulings of the Chief Justice on the trial of the action before a mixed jury at the last October Term.

The action is in trover, and is brought by the administrator of the estate of William Harbottle, deceased, for the wrongful conversion of one express carriage or hack, of the value of $350, in the lifetime of plaintiff's intestate. A second count alleges a conversion, since the intestate's death, of four horses, four sets of harness, one express carriage and three certain promissory notes for sums amounting in the whole to $1,200.

From the testimony it appears that one express carriage and three horses, part of the property claimed by the plaintiff, were sold or taken by the defendant, who married the widow of the intestate.

Two of the promissory notes, one for $500, and the other for $106, were made by one Alo, in favor of the intestate's wife, and payable to her order, during the life of the intestate and at his express direction, and judgment was obtained by the defendant and his wife against the maker, after the death of the intestate. The whole amount was not recovered, but the suit was compro-

mised by Alo paying the defendant a part of the amount, $245. The consideration for the note for $500 was alleged by the defendant to have been that amount lent to Alo, $250 of which was alleged to have been the private money of Mrs. Harbottle and $250 the money of the intestate.

. It was also claimed that the carriages and horses were the private property of Mrs. Harbottle, it being alleged that they were purchased by her, out of moneys derived from the sale of land belonging to her, and from rents and receipts for the use of the carriages. The intestate was bed-ridden and had been so for many years, and there was some evidence that money earned by the hire of the expresses was paid to him.

Counsel for the defendant asked the Court to direct the jury (*inter alia* :)

"1. That marriage does not vest choses in action of the wife in the husband unless he shall do some act during coverture to appropriate them. If the husband dies before doing so, they remain the property of the wife."

"2. Actual reduction to possession by husband of wife's choses in action is necessary to bar the wife's right of survivorship."

Which instructions the Court refused, but charged the jury (*inter alia* :)

"If you find that those hacks, etc., were bought with money received from her (*i. e.* intestate's wife) lands, and from the earnings of her horses and carriages, subsequently, you will find them to be the property of her husband. Anything in her possession, whether bought with her own or her husband's money, belongs to him and is his own property and goes to his administrators. Although the note was made to the wife, it was the husband's money and belongs to his estate. Any note given or payable to Harbottle's wife, executed during her coverture, was the property of her husband, and since his death the property of the administrator of Harbottle's estate."

To which and other instructions, (which it is unnecessary to refer to here) and to the refusal to direct as requested, the defendant, by his counsel, duly excepted and such exceptions were allowed.

The exceptions were argued on the 19th day of February, last,

by S. B. Dole for the defendant, and C. W. Ashford for the plaintiff.

The following authorities were referred to by defendant's counsel:

Schouler's Domestic Relations, 115, 114, 150; *Hasslocher vs. Ex'rs of Robinson*, 3 Hawn., 802; 2 Kent's Comm., 115, note c; 2 Leigh Nisi Prius, 1199; *Estate of Hinds*, 5 Whart.; *Pierce vs. Briggs*, 4 Hawn., 493; *Gatero vs. Madeley*, 6 M. & W. 425; *Scarpellini vs. Atheson*, 7 Q. B., 447:

And he submitted that the notes were choses in action, and that the intestate not having reduced them into possession, they became the property of his wife after his decease, and that the other articles of personal property, having been purchased with her own money, they became her own separate estate.

C. W. Ashford, for the plaintiff, claimed that notwithstanding the promissory notes were made payable to the wife, they were in fact the property of the intestate, and that the possession by the wife of the notes and other property was the possession of the husband.

The jury gave their verdict (one dissenting) for the plaintiff, and assessed the damages separately, as follows:

One carriage............................................................... $100 00
Three horses.............................................................. 150 00
Notes........................................................................ 245 00

### BY THE COURT.

On a full consideration of the case, the evidence and the authorities referred to, we are of opinion that the presiding judge should have instructed the jury that the promissory notes in question were choses in action of the wife, and that the intestate not having taken any steps to reduce them into possession, they did not pass to the plaintiff, and that consequently the verdict should have been for the defendant in respect of such notes.

The cases of *Shuttlesworth vs. Noyes*, 8 Mass., 229, and *Commonwealth vs. Manley*, 12 Pick., 173, which appear to conflict with this view, are overruled by *Hayward vs. Hayward*, 20 Pick., 517, and other cases.

But with regard to the carriage and horses, we think that the

jury were properly instructed, and that the evidence supports the verdict as to those items.

We therefore hold that a new trial should be had between the parties, unless the plaintiff remits the damages, $245, and interest, awarded in respect of the promissory notes, and do so order. The costs of the former trial to be costs in the cause, each party to pay his own costs of the exceptions.

*Ashford & Ashford*, for plaintiff.

*S. B. Dole*, for defendant.

Honolulu, March 8, 1886.